UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IZETTA D. FULLER, | ) | Case NO. CV 06-1754-PJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## I.
## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the decision by Defendant Social Security Administration (the "Agency"), denying her application for Supplemental Security Income ("SSI"). Alternatively, she seeks remand for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is affirmed.

## II.
## STATEMENT OF FACTS

Plaintiff was born in 1960, and was 45 years old at the time of the administrative hearing. (Administrative Record ("AR") 48.) She

did not finish high school, but has a G.E.D.  (AR 158.)  She worked steadily for 22 years before applying for Social Security benefits in 2004.  (AR 72.)  Her past work experience includes work as a press operator, bus driver, telemarketer, and team leader (for a merchandiser).  (AR 72.)

In December 2003, Plaintiff sought treatment from Dr. Rodney Ebrahimian.  (AR 101-09.)  Dr. Ebrahimian diagnosed Plaintiff with a lumbar spine sprain, prescribed pain medication and muscle relaxers, and ordered x-rays and an MRI.  (AR 106-08.)  MRI results indicated a slight bulge in two discs, but no abnormality in the nerves was noted.  (AR 111.)

On August 24, 2004, Plaintiff applied for SSI, alleging disability as of April 23, 2003.  (AR 141-43.)  At a November 2004 appointment with Dr. Ebrahimian, Plaintiff complained of constant, slight-to-moderate lower back pain, increasing to constant, moderate-to-occasionally-severe pain with prolonged sitting, bending, reaching, and twisting.  (AR 124.)  Dr. Ebrahimian diagnosed Plaintiff with a herniated nucleus pulposus in the lumbar spine and precluded her from lifting over 20 pounds, bending, stooping, running, sitting, and working without breaks.  (AR 129.)  In a later consultation, another doctor diagnosed her with a non-permanent disc bulge and re-issued a prescription for pain medication.  (AR 140.)  That doctor restricted her from lifting over five pounds, stooping, bending, and sitting or standing for more than 60 minutes at a time.  (AR 140.)

When Plaintiff's application for benefits was initially denied, she timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  (AR 27-31, 33.)  A hearing was held on September 13,

2005, wherein Plaintiff appeared without counsel and testified that she still suffered from lower back pain. (AR 152-66.)

On November 10, 2005, the ALJ issued a decision denying Plaintiff's claim. (AR 19-24.) At step one, he determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR 20.) At step two, he concluded that Plaintiff had degenerative disc disease of the lumbar spine, but determined at step three that it was not severe enough to meet or equal a Listing. (AR 20.) At step four he found that Plaintiff could not lift more than 20 pounds occasionally or ten pounds frequently, nor stand or walk longer than four hours in an eight-hour workday. (AR 20.) He also found that Plaintiff was unable to do more than occasional climbing, balancing, stooping, kneeling, or crawling. (AR 20.) The ALJ determined that, because of Plaintiff's physical restrictions, she could not perform her past work. (AR 23.) The ALJ concluded at step five, however, that considering Plaintiff's age, education, work experience, and residual functional capacity, she was capable of performing light, unskilled jobs, like fundraiser and assembler, and, thus, was not disabled. (AR 22.)

III.

STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported

by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court must uphold the ALJ's conclusion even if "the evidence [in the record] is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence reasonably can support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(applying the harmless error standard).

## IV.

## DISCUSSION

In this appeal, Plaintiff claims that the ALJ erred by: (1) rejecting her credibility; (2) failing to properly consider the side effects of her medication; and (3) failing to include the side effects in the hypothetical question posed to the vocational expert. For the reasons set forth below, the Court finds that the ALJ's decision is supported by substantial evidence and is not based on legal error.

A. <u>The ALJ Properly Rejected Plaintiff's Credibility</u>

Plaintiff contends that the ALJ erred in rejecting her testimony that she suffered from severe back pain. (Joint Stipulation ("JS") 2-5.) The ALJ based this finding on the fact that Plaintiff's ability to perform daily activities was inconsistent with her claims of pain, her pain was relieved by non-narcotic medication, and there were gaps in her medical treatment. As set forth below, these are specific, clear, and convincing reasons for rejecting Plaintiff's credibility and they are mostly supported by the evidence in the record. For these reasons, the ALJ's finding is affirmed.

The ALJ is responsible for determining credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)("Credibility determinations are the province of the ALJ."). The ALJ may consider many factors when assessing a claimant's credibility, including inconsistencies between her testimony and her daily activities, *see Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), the type of pain medication she uses to control her pain, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), and any gaps in treatment. *Fair,* 885 F.2d at 603. The ALJ may only reject a claimant's credibility by citing specific, clear, and convincing reasons for doing so. *Smolen*, 80 F.3d at 1281.

In the case at bar, Plaintiff alleged that she suffered from "constant and . . . very severe" back pain. (AR 83.) She testified at the administrative hearing that this pain prevented her from working. (AR 161.) The ALJ found that Plaintiff's claims were not credible. (AR 22.) He noted that she lived alone and performed all of the necessary household chores, i.e., she cooked, cleaned, shopped, etc. (AR 21.) The ALJ found that these activities were inconsistent

with Plaintiff's claim that she was in too much pain to work. The record supports the ALJ's finding that Plaintiff regularly performed activities that were inconsistent with her claim of disabling pain.[1] Further, this is a legitimate reason for rejecting a claimant's credibility. *See Smolen*, 80 F.3d at 1284.

Next, the ALJ discounted Plaintiff's pain testimony based on the fact that she was taking a non-narcotic pain medication, Tramadol, which relieved her pain. (AR 21.) He reasoned that, if Plaintiff's pain was as severe as she claimed, she would have used stronger medication. (AR 21.) The Court disagrees with this reasoning. According to the Physician's Desk Reference Pocket Guide to Prescription Drugs ("PDR"), Tramadol is prescribed for "moderate to moderately severe pain." *See* PDR at 1315 (5th ed. (2002)). Thus, Plaintiff's use of this non-narcotic medication to control her pain does not necessarily undercut her testimony that her pain was severe.

Finally, the ALJ considered the fact that there were three, five-to-seven-month gaps in Plaintiff's medical treatment in a two-year period. (AR 21.) The ALJ reasoned that, if Plaintiff's pain was as severe as she described, she would have received constant medical attention. (AR 21.)

The ALJ rightfully considered gaps in Plaintiff's medical care in assessing her credibility, *see Fair,* 885 F.2d at 603, but the record does not support all of the gaps reported by the ALJ. According to

---

[1] In fact, there were additional activities in the record that supported the ALJ's conclusion that Plaintiff's reported back pain would not preclude her from working. For example, at the time Plaintiff testified, she was attending daily, day-long classes, which she, apparently, was able to sit through. (AR 160.) She also had to drive an hour each way to get to the classes. (AR 160.)

the ALJ, Plaintiff failed to obtain medical care from February 14, 2004 to September 28, 2004, from November 4, 2004 to May 10, 2005, and from May 12, 2005 to November 10, 2005. (AR 22.)  As to the first gap, the record establishes that Plaintiff regularly saw her treating physician, Dr. Ebrahimian, on a monthly basis between February 2004 and September 2004.  (AR 127-28.)  According to Dr. Ebrahimian's report, Plaintiff received treatment on March 17, 2004; May 5, 2004; May 14, 2004; June 9, 2004; July 14, 2004; August 25, 2004; and September 29, 2004.  (AR 128.)  Thus, the record does not support the ALJ's finding that Plaintiff did not receive treatment from February 2004 to September 2004.

As to the other two gaps, the record does support the ALJ's finding that Plaintiff failed to obtain medical care during those periods.  The record discloses that between November 2004 and November 2005 Plaintiff went to the doctor once, in May 2005, to have a prescription filled.  (AR 140.)  This lack of treatment suggests that Plaintiff was not suffering from debilitating pain during this period, contrary to her claims.[2]

Plaintiff does not dispute that there were gaps.  Instead, she tries to explain them by pointing out that she was unable to afford medical care at times.  (AR 160.)  The record does not support this explanation, however.  It appears that Plaintiff had access to free medical care during the periods in question through her Worker's Compensation case.  She was seeing Dr. Ebrahimian as a result of that case.  (AR 101.)  And later, when she needed to refill her

---

[2] Plaintiff's appointment in May 2005 was on the 11th. (AR 140.)  According to the treatment notes, she was supposed to return two weeks later, on the 25th, but, apparently, never did. (AR 140.)

prescription, she went to Bayside Medical Center, which also provided her care as a result of her Worker's Compensation case. (AR 140.)

In sum, the ALJ provided three reasons for finding that Plaintiff's claims of excess pain were not credible: 1) her daily activities contradicted her claims of excess pain, 2) she was controlling her pain with non-narcotic pain relievers, and 3) there were gaps in her treatment. Two of those reasons are supported by the record--the daily activities and the gaps in treatment--and one is not--the use of a non-narcotic pain reliever. The Court must then decide whether the two basis that are supported by the record are enough to justify the ALJ's finding that Plaintiff was not credible. The Court concludes that these two reasons are enough. The fact that Plaintiff can perform a whole array of activities on a regular basis suggests that she is exaggerating when she says that her back pain prevents her from working. Likewise, the fact that Plaintiff went for more than a year without medical care--except for a one-time visit to a clinic to re-fill a prescription--suggests that her pain is not as severe as she claims it is. For these reasons, the ALJ's credibility finding will not be disturbed.

B.  <u>The ALJ's Failure To Consider The Side Effect Of Plaintiff's Medication Does Not Require Reversal</u>

Plaintiff contends that the ALJ improperly failed to consider the side effect of her medication, namely drowsiness, in reaching his decision that she was not disabled. (Joint Stipulation at 9-10.) The record shows, however, that Plaintiff failed to document that she was impaired by the side effect of her medication and, therefore, the ALJ did not err in not addressing it.

8

A claimant bears the burden of producing clinical or objective evidence that she was impaired by the proper use of prescribed medication. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (holding allegations of side effects of medications must be specific and clinically supported). A fair reading of this record reveals that Plaintiff did not provide any objective, clinical evidence that Tramadol impaired her ability to work.

Plaintiff applied for benefits in August 2004, alleging that her back pain precluded her from working. (AR 87.) In October 2004, she provided the Agency with a list of her medications and noted that they made her drowsy. (AR 90.) She was not taking Tramadol at that time, but was taking, instead, Diazepam, Hydrocodone, Aspirin, Piroxicam, and Ranitidine. (AR 90.)

By the time Plaintiff appeared for the administrative hearing, she had been prescribed Tramadol, and was not taking any of the other medications. (AR 160.) When asked by the ALJ why she could not work, Plaintiff testified that it was because of her back pain. (AR 161.) She never claimed that it was because the Tramadol made her drowsy. (AR 161.) She was later asked if her medication had any side effects, and she offered, almost in passing, that it made her drowsy. (AR 162.)

There is no objective, clinical evidence in this record supporting Plaintiff's claim that Tramadol made her drowsy, or, assuming that it did, that it would have interfered with her ability to work. In fact, the only objective, clinical evidence in the record is to the contrary. When Plaintiff was prescribed Tramadol on May 11, 2005, the doctor who prescribed it released Plaintiff to work without

any restrictions due to the medication. (AR 140.)  Absent clinical, objective evidence, Plaintiff cannot prevail here.

Plaintiff argues that the PDR supports her argument that Tramadol can cause drowsiness. Though the Court agrees that the PDR provides that Tramadol can cause drowsiness, *see* PDR at 1315, it was not before the ALJ, and, even it was, it would not have established that Plaintiff is one of the people who suffers from drowsiness from taking the medication.[3]  Nor would the PDR reference establish that Plaintiff's drowsiness would interfere with her ability to work.

What remains is Plaintiff's bald assertion that Tramadol makes her drowsy. This assertion must be considered in the context of this case, where Plaintiff was found to be not credible. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002)(affirming ALJ's rejection of claimant's claim of side effects because claimant was not credible and only evidence of side effects were her statements that they existed). Plaintiff's failure to present any objective evidence supporting her claim precludes her from obtaining relief. *Miller*, 770 F.2d at 849.

C.   The ALJ Did Not Err In Failing To Include Drowsiness In The Hypothetical

Finally, Plaintiff complains that the hypothetical question that the ALJ posed to the vocational expert was incomplete because it did not include the fact that Plaintiff suffered from drowsiness as a result of her medication. (AR 164-65.)  As explained below, because Plaintiff failed to substantiate her claim that drowsiness would

---

[3]  Under a heading, "What side effects can occur?," the PDR provides that "Side effects cannot be anticipated."  PDR at 1316.

interfere with her ability to work, the ALJ did not err by not including this factor in the hypothetical.

When posing a hypothetical question to a vocational expert, the ALJ "'must set out *all* the limitations and restrictions of the particular claimant.'" *Magallanes*, 881 F.2d at 756 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)(emphasis in original)).  An ALJ need not, however, include all claimed impairments in his hypothetical questions.  *Light v. Social Security Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).  It is proper for the ALJ to limit a hypothetical to only those restrictions that are supported by substantial evidence in the record.  *Magallanes*, 881 F.2d at 756-57.

In this case, the hypothetical questions that the ALJ posed to the vocational expert included all of the limitations for which there was substantial evidence.  (AR 164-65.)  As noted above, Plaintiff did not establish that her drowsiness impacted her ability to work.  Because she failed to do so, the ALJ was not required to include it in the hypothetical.  *Magallanes*, 881 F.2d at 756-57.

V.

CONCLUSION

For all these reasons, the ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence and is not based on legal error.  The decision, therefore, is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED:   August 13, 2007.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\FULLER, I 1754\Memo_opnion.wpd